ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL **2 5** 2014

JAMES N. ~~TEN~~, Clerk
By: _____
Deputy Clerk

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

SCJ

LASHUNDA BANKS, JARROD S.
WHITE, BOYCE E. BUSH, FACIA
BEYSOLOW, CALVIN
RICHARDSON, and ZALIKA
HOWARD,

     Plaintiffs,

     v.

DENDREON CORPORATION,

     Defendant.

CIVIL ACTION FILE

NO: 1:14-CV-2404

**JURY TRIAL DEMANDED**

## COMPLAINT

COME NOW Plaintiffs LaShunda Banks, Jarrod S. White, Boyce E. Bush,

Facia Beysolow, Calvin Richardson, and Zalika Howard and file this Complaint

against Defendant Dendreon Corporation and in support hereof show unto the

Court the following:

### PARTIES, VENUE, AND JURISDICTION

1.    Plaintiff LaShunda Banks ("Banks") is an African-American female, is

over the age of nineteen (19) years, is a citizen of the United States, and resides in the

State of Georgia.  At all times relevant to this Complaint, Banks was an employee of Defendant Dendreon.

2.      Plaintiff Jarrod S. White ("White") is an African-American male, is over the age of nineteen (19) years, is a citizen of the United States, and resides in the State of Georgia.  At all times relevant to this Complaint, White was an employee of Defendant Dendreon.

3.      Plaintiff Boyce E. Bush ("Bush") is an African-American male, is over the age of nineteen (19) years, is a citizen of the United States, and resides in the State of Georgia.  At all times relevant to this Complaint, Bush was an employee of Defendant Dendreon.

4.      Plaintiff Facia Beysolow ("Beysolow") is an African-American female, is over the age of nineteen (19) years, is a citizen of the United States, and resides in the State of Georgia.  At all times relevant to this Complaint, Beysolow was an employee of Defendant Dendreon.

5.      Plaintiff Calvin Richardson ("Richardson") is an African-American male, is over the age of nineteen (19) years, is a citizen of the United States, and resides in the State of Georgia.  At all times relevant to this Complaint, Richardson was an employee of Defendant Dendreon.

2

6.    Plaintiff Zalika Howard ("Howard") is an African-American female, is over the age of nineteen (19) years, is a citizen of the United States, and resides in the State of Georgia.  At all times relevant to this Complaint, Howard was an employee of Defendant Dendreon.

7.    Defendant Dendreon Corporation ("Dendreon" or "Defendant") is a Delaware corporation authorized to transact business as a foreign profit corporation in the State of Georgia.  Defendant Dendreon operates a facility in the State of Georgia located at 6715 Oakley Industrial Blvd., Union City, Georgia, is subject to venue and jurisdiction in this Court, and may be served with Summons and a copy of this Complaint by delivering the same to its registered agent, CT Corporation System, at 1201 Peachtree St. NE, Atlanta, Georgia 30361.

8.    Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4); 42 U.S.C. § 2000e-5; and 42 U.S.C. §§ 12112, 12117(a), and 12203, which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(l) and (3), Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a and the "Civil Rights Act of 1866," as amended by Section 101 of the "Civil Rights Act of 1991," and codified at 42 U.S.C. § 1981.

3

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5. Defendant Dendreon resides in the Atlanta Division of the Northern District of Georgia and all of the allegations set forth herein occurred within the Atlanta Division of the United States District Court for the Northern District of Georgia.

**INTRODUCTION**

10.     This is an action for damages to redress unlawful discrimination and harassment on the basis of race and retaliation against Plaintiffs. This suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, as amended by the Civil Rights Act of 1991, 42 U. S.C. § 1981a (hereinafter "Title VII"); and 42 U.S.C. § 1981 (hereinafter "§ 1981"). Said provisions provide for relief against discrimination and harassment in employment on the basis of race and retaliation related thereto. Plaintiffs assert their claims for relief for Defendant Dendreon's violations of § 1981, via 42 U.S.C. § 1983. Specifically, Plaintiffs allege that Defendant Dendreon subjected them to a hostile work environment based on their race that culminated in (a) altering Plaintiffs' working conditions and (2) Defendant Dendreon's taking tangible employment action that directly lead to Plaintiffs' suspensions, administrative leaves, and terminations. In addition,

4

Defendant Dendreon discriminated against Plaintiffs based on their race in the terms and benefits of their employment including discipline and unlawfully terminating Plaintiffs in retaliation for their opposition to racial harassment and discrimination. Plaintiffs seek compensatory and punitive damages and request a trial by jury of all issues pursuant to 42 U.S.C § 1981a. Further, Plaintiffs seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## ADMINISTRATIVE PROCEEDINGS

11. Plaintiffs pursue claims under both Title VII and 42 U.S.C. § 1981, via 42 U.S.C. §1983.

12. Plaintiffs, with respect to each of their Title VII claims, have filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

13. The EEOC issued a Notice of Right to Sue for each individual Plaintiff (the "Notices"). True and accurate copies said Notices are attached hereto and incorporated by express as Exhibit "A."

14. All conditions precedent to the filing of this Complaint have been satisfied.

## FACTUAL AVERMENTS

15. Plaintiffs are all former employees of Defendant Dendreon.

5

16.     During Plaintiffs' employments with Defendant Dendreon, they all worked in the same area of Dendreon's Georgia facility and performed similar job functions. Said job functions included, but were not limited to, the processing of human blood in the manufacture of an individualized prostate cancer treatment drug known as Provenge.

17.     During Plaintiffs' employments with Defendant Dendreon, they shared common supervisors including, but not limited to, David Vargas, Anthony Rotunno, and Geoff Barnes.

18.     Plaintiffs were each involved in the manufacturing process of Provenge.

19.     During Plaintiffs' employments with Defendant Dendreon, they witnessed and suffered discrimination based on their race.

20.     Plaintiffs were treated less favorably than Caucasian and Hispanic employees in the terms and conditions of their employment and the application of Defendant Dendreon's rules and policies.

21.     During the course of their employments with Defendant Dendreon, Plaintiffs were denied training based upon their race.

22.     As a direct result of being denied training, Plaintiffs were denied promotional opportunities, pay increases, and bonuses.

6

23. Defendant Dendreon has a practice and a custom of selecting less qualified non- African-American employees—usually Caucasian or Hispanic employees—for supervisory positions with no posting or application process. This custom and practice by Defendant Dendreon denies African-American employees the opportunities for promotions.

24. Plaintiffs were denied promotions to positions which would have afforded them greater pay and prestige.

25. Plaintiffs were subjected to racially discriminatory and hostile comments and conduct from non-African-American employees including supervisors.

26. Despite Plaintiffs' numerous complaints regarding racially discriminatory and hostile conduct, Defendant Dendreon took no remedial actions to stop or prevent such conduct.

27. The racially discriminatory and hostile conduct was ongoing and continuing during the Plaintiffs' employ with Defendant Dendreon. Said conduct created a racially hostile working environment for African-Americans, including Plaintiffs. Said conduct altered the working conditions for Plaintiffs, *to wit*, by (a) pressuring Plaintiffs to remain silent with respect to workplace violations and (b)

7

tangible employment actions taken by Defendant Dendreon that directly lead to Plaintiffs' suspensions, administrative leaves, and terminations.

28.     Plaintiffs have been subjected to racial epithets, slurs, and comments being written or spoken by non-African-American supervisory or managerial employees of Defendant Dendreon.     Such epithets, slurs, and comments are pervasive in the Dendreon workplace. Said epithets, slurs, and comments include, but are not limited to, the following: (a) "NIGGA" written on a gamma wipe; (b) jokes about "fried chicken;" (c) jokes about "chicken and waffles;" (d) being called an "Angry Black Woman;" (e) being called a "dumb-ass nigger;" (f) being told to dress "more like white people and less like a hoodrat;" (g) being told "to stop dancing around like a monkey;" (h) being asked "how many spears do you own;" (i) members of management making monkey noises and laughing; (j) African-Americans being unable to swim or swim well; (k) statements that "black people are unable to grasp the intricacies of some of the detailed processes or clinical trials" which were used to justify denying African-Americans opportunities and promotions; and (l) other racist statements to the effect that African-Americans cannot be "trusted to tell the truth."

29.     Plaintiffs were aware of the above racial epithets, slurs, and comments as described herein during their employments with Defendant Dendreon.

8

30.     Said racial epithets, slurs, and comments were of a continuous nature and occurred throughout the tenure of Plaintiffs' employments with Defendant Dendreon.

31.     To an objective person, said racial epithets, slurs, and comments are severe in nature and connote a hostile environment based on race such that (a) Defendant Dendreon altered the working conditions of Plaintiffs and (b) Defendant Dendreon took tangible employment actions that directly lead to the Plaintiffs' suspensions, administrative leaves, and/or terminations.

32.     Said racial epithets, slurs, and comments constituted conduct that was humiliating to Plaintiffs as it pertained directly to Plaintiffs.

33.     Said racial epithets, slurs, and comments did in fact humiliate Plaintiffs.

34.     Said racial epithets, slurs, and comments were severe, pervasive, and changed the terms and conditions of Plaintiffs' employments.  Plaintiffs were all subjected to such racially derogatory writings, slurs, and comments.

35.     Despite Plaintiffs' complaints about said racially hostile conduct to management, their supervisors, human resources, and/or quality assurance, no action was taken by Defendant Dendreon to stop or prevent said conduct from reoccurring.

9

36.     As a direct and proximate result of Defendant Dendreon's failure to take any action to stop or prevent said racially hostile conduct from reoccurring, said conduct continued.

37.     On information and belief, beginning in or around December 2013, Defendant Dendreon began investigating Plaintiffs along with two other African-Americans. At no time during the approximate two months of said investigation did Defendant Dendreon provide Plaintiffs with the purpose or reason for said investigation. Nonetheless, Plaintiffs were interviewed and interrogated separately by or at the direction of Defendant Dendreon. According to Plaintiffs, Defendant Dendreon's investigation was in fact a "witch hunt."

38.     During said investigation, Plaintiffs were encouraged to inform on other employees, including each other, for violating Standard Operating Procedures (SOPs), Error Reporting (ER), module behavior, bullying, and inappropriate language.

39.     During said investigation, Plaintiffs were interrogated on SOPs, ER, module behavior, bullying, and inappropriate language.

40.     On information and belief, information provided to Defendant Dendreon during said interrogations led to Plaintiffs' suspensions and administrative leaves.

10

41.     On information and belief, said interrogations were conducted as a pretext for racially discriminatory conduct.

42.     On information and belief, Plaintiffs were suspended, placed on administrative leave, and eventually terminated in retaliation for reporting to Defendant Dendreon that said interrogations were a pretext for racially discriminatory conduct.

43.     Despite multiple requests from Plaintiffs, Defendant Dendreon did not provide Plaintiffs with the basis and/or justification for said interrogations until after Plaintiffs were suspended, placed on administrative leave, and/or terminated.

44.     Following the conclusion of Defendant Dendreon's two month investigations, Plaintiffs' employments therewith was terminated.

45.     Defendant Dendreon's purported justifications for Plaintiffs' terminations included, but are limited to: (a) "bullying," (b) "process manipulation," (c) "process deviation," (d) "intimidation of others," and (e) "inappropriate behavior."

46.     On information and belief, Defendant Dendreon's purported justifications for Plaintiffs' terminations are untrue, false, and are in fact a pretext for racially discriminatory conduct.

11

47.     On information and belief, Defendant Dendreon did not take any disciplinary or other action against Caucasian and Hispanic employees who were reported for the same purported conduct used by Defendant Dendreon to justify the termination of Plaintiffs' employments.

48.     On information and belief, Defendant Dendreon's actions, including, but not limited to, interrogating Plaintiffs, suspending Plaintiffs, placing Plaintiffs on administrative leave, and terminating Plaintiffs' employments, were all motivated by race.

49.     Said actions, including, but not limited to, interrogating Plaintiffs, suspending Plaintiffs, placing Plaintiffs on administrative leave, and terminating Plaintiffs' employment, were, whether in whole or in part, in retaliation for complaints of racial discrimination.

### LaShunda Banks

50.     From on or about February 22, 2011 to February 19, 2014, Plaintiff LaShunda Banks was employed in Defendant Dendreon's manufacturing department.  As of the date of her termination on February 19, 2014, Banks held the title "Manufacturing Associate II."

51.     Prior to her termination, Banks was aware of the racial epithets, slurs, and comments in the Dendreon workplace as previously described herein.

52.     Prior to December 2013, Banks made attempts to report acts of racial discrimination to Defendant Dendreon's human resources department. However, rather than taking action to stop and prevent this conduct, Defendant Dendreon belittled Banks and labeled her as an "Angry Black Woman."

53.     In or around early 2012, a Hispanic employee of Defendant Dendreon, Andres Pantoja, wrote "NIGGA" on a gamma wipe. Said gamma wipe was found by Banks and others as they were preparing to clean their work stations. Despite Banks reporting this conduct to her Caucasian manager, Stephen Cochran, Defendant Dendreon ignored the incident. Moreover, shortly thereafter Pantoja was promoted to another department.

54.     In or around December 2013, Banks overheard her superior, David Vargas, make a racially insensitive comment regarding African-Americans and fried chicken.  Banks found said comment to be offensive and humiliating, especially in light of the fact that Vargas had the power to demote, promote, and fire her.

55.     Banks was offended by such racial comments and they materially changed the terms and conditions of her employment.

56.     Despite Banks' multiple complaints to her supervisors at Defendant Dendreon of offensive and humiliating racial comments and the racially charged

13

environment, said conduct continued. On information and belief, Defendant Dendreon never investigated Caucasian employees reported for such conduct.

57. As a direct and proximate result of Defendant Dendreon's failure to act upon multiple reports of racially discriminatory conduct, Defendant Dendreon chilled Bank's willingness to report additional racially discriminatory conduct in the future.

58. On or about December 22, 2013, Banks reported said racial epithets, slurs, and comments to her two immediate supervisors, Geoff Barnes and Terrance Vassar-West.

59. Following said report, Banks was questioned by and/or at the direction of Defendant Dendreon. Thereafter, Banks was "suspended" with pay and was ordered to stay off of Defendant Dendreon's facility until given further notice.

60. On or about January 3, 2014, Banks received a telephone call from one of her supervisors, David Vargas. During said telephone conversation, Vargas informed Banks that she was being placed on "administrative leave" with pay and that she was to report to Sheila Carmichael in Defendant Dendreon's human resources department.

61.    On or about January 10, 2014, Banks reported to Sheila Carmichael as instructed.   Banks then proceeded to inform Carmichael of the above described racially charged environment.

62.    On or about January 10, 2014, Banks informed Carmichael that African-Americans within Defendant Dendreon's manufacturing department were continually and routinely denied advancement opportunities in favor of Caucasians.  Banks explained that a Caucasian employee, Richard Jagielski, was promoted while more qualified similarly-situated African-American employees, including Banks, were not.  Banks also reported that although Jagielski regularly and routinely "deviated from the process," he had not been investigated or reprimanded.

63.    On or about January 10, 2014, Banks informed Carmichael that another of Defendant Dendreon's Caucasian employees, Joel Bauer, was promoted over his African-American peers, including Banks, despite the fact that Bauer had less experience and education than his African-American colleagues.

64.    On or about January 10, 2014, Banks informed Carmichael that she had reason to believe that Jenna Nicks, a Caucasian employee of Defendant Dendreon, had falsified certain Operator Qualification documents by changing important data during the Provenge manufacturing process.  Ensuring that said

15

Operator Qualification documents are prepared accurately is determinative of a trainee's (Nicks') proficiency in carrying out the process. Collis Carswell, III, an African-American employee of Defendant Dendreon, informed Nicks of the error and instructed her to make the appropriate footnote. However, instead of following the proper protocol, Nicks simply changed her numbers. Despite this egregious act, Nicks was not disciplined. In or around May or June 2013, an African-American employee of Defendant Dendreon, Betty Manson, was reported for the same egregious conduct. While at the time of their respective conduct, Nicks was instructed as to the proper procedure, Manson was not. Nonetheless, Manson was terminated and Nicks kept her job.

65. On information and belief, Defendant Dendreon retaliated against Banks in response to her complaints regarding racially discriminatory conduct by altering the terms and conditions of her employment due to her race.

66. As a direct and proximate result of Banks' complaints regarding racially discriminatory conduct by her Dendreon managers and supervisors, Banks was denied training for advancement and other opportunities for promotion in favor of Caucasian and Hispanic employees with less experience and/or qualifications.

16

67. On information and belief, Banks was treated differently from white workers in the terms and conditions of her employment and was subjected to a hostile work environment because of her race.

68. Defendant Dendreon intentionally and maliciously discriminated against Banks in the terms, conditions, and benefits of her employment.

69. In retaliation for Banks' good faith opposition to racial harassment and racial discrimination, Defendant Dendreon took adverse employment actions against her.

70. At the conclusion of the approximate two month investigation described above, Defendant Dendreon suspended Banks, placed her on administrative leave, and then terminated her employment.

71. The unlawful actions of Defendant Dendreon, as set forth above, constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

72. The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiff Banks. Such conduct culminated in both (a) altering Banks' working conditions and (b) Defendant

17

Dendreon taking tangible employment action that directly lead to Banks'
suspension, administrative leave, and termination.

73. Defendant Dendreon knew, or should have known, of the racial
discrimination, racial harassment, and retaliation suffered by Banks.

74. Defendant Dendreon failed to take any prompt and/or effective action
reasonably calculated to result in the prevention and/or remedy of the racial
harassment, racial discrimination, and/or retaliation suffered by Banks.

75. As a direct and proximate result of its conduct, Defendant Dendreon
has violated the proscriptions against race discrimination, racial harassment, and
retaliation under Title VII and 42 U.S.C. § 1981.

76. Banks was offended by such racial comments and they materially
changed the terms and conditions of her employment.

77. Banks was fired or otherwise terminated from her employment with
Defendant Dendreon based upon pretextual reasons, *i.e.* "process manipulation."
Said reasons are and were patently false and were a pretext for her firing.

78. As a direct and proximate result of Defendant Dendreon's conduct,
Banks has been deprived of income and other benefits due to her, including a
bonus.

18

79. As a direct and proximate result of Defendant Dendreon's conduct, Banks has suffered embarrassment, humiliation, inconvenience, and mental distress.

80. Defendant Dendreon engaged in the practices complained of herein with malice and/or reckless indifference to Banks' federally protected rights.

81. Defendant Dendreon engaged in the practices complained of herein with the specific intent to cause harm to Banks.

82. Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors raises the presumption of deliberate indifference to the violation of Banks' federally protected rights.

83. As a direct and proximate result of Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors, Banks has been damaged through lost pay, potential raises, and bonuses.

## Jason S. White

84. From on or about February 8, 2011 to December 20, 2013, Plaintiff Jarrod S. White was employed in Defendant Dendreon's manufacturing department. As of the date of his termination on December 20, 2013, White held the title "Manufacturing Associate II."

85.     Prior to his termination, White was aware of the racial epithets, slurs, and comments in the Dendreon workplace as previously described herein.

86.     In or around April 2011, White, along with six to eight other African-American Dendreon employees, was denied certain training in favor of newly hired Caucasian and Hispanic employees.  Said training provided these newly hired Caucasian and Hispanic employees with greater opportunities for advancement, raises, and promotions within Defendant Dendreon.  Because White was denied said training, these opportunities were not available to him.

87.     In or around April 2011, David Vargas, White's superior, stated to White and Debbie Bradshaw, another African-American Dendreon employee, that Bradshaw needed to start dressing more like Defendant Dendreon's white employees and less like a "hoodrat."   Said statement was humiliating and demeaning to White.

88.     In or around May 2011, White, along with several other African-American Dendreon employees, was again denied certain training in favor of newly hired Caucasian and Hispanic employees.  Said training provided these newly hired Caucasian and Hispanic employees with greater opportunities for advancement, raises, and promotions within Defendant Dendreon.  Because White was denied said training, these opportunities were not available to him.

89. In or around June 2011, Caucasian and Hispanic employees within Defendant Dendreon's manufacturing department were selected for overtime opportunities totaling forty (40) hours in one week. Neither White nor any other African-American employees within Defendant Dendreon's manufacturing department were notified of these overtime opportunities.

90. In or around June 2011, White was present when Vargas asked Lateef Balogoun, an African-American Dendreon employee of Nigerian descent, "how many spears do you own." Said statement was humiliating and demeaning to White.

91. In or around June 2011, Defendant Dendreon's employees Joel Biles, Terrance Vasser-West, and David Vargas ridiculed White and Balogoun by making racially charged imitations of "monkey noises." Said actions were humiliating and demeaning to White.

92. In or around October 2011, Joel Biles, White's superior, made a racially charged comment to White and other Dendreon African-American regarding "chicken and waffles." Said statement was humiliating and demeaning to White.

93. In or around January 2012, Vargas took no action to reprimand another Caucasian Dendreon employee, Greg Shell, after Shell made a racist

comment regarding African-Americans and swimming. Vargas was present for said comment and, in fact, appeared to be amused by it as he laughed. Said actions were humiliating and demeaning to White.

94. In or around February 2012, Joel Biles stated to White that certain Defendant Dendreon African American employees were not competent to grasp the intricacies of all the detailed processes and clinical trials involved in the manufacture of Provenge. Biles stated further that this is why he selected Caucasian and Hispanics over African-American employees. Said statement was humiliating and demeaning to White.

95. In or around late January or early February 2012, White overheard a conversation between Biles and David Vargas during which an African-American Dendreon employee, John Dixon, was referred to as "a dumb-ass nigger." Said statement was humiliating and demeaning to White.

96. White was offended by such racial comments and they materially changed the terms and conditions of his employment.

97. Despite multiple complaints by White to his supervisors at Defendant Dendreon of offensive and humiliating racial comments and the racially charged environment, said conduct continued.

98. As a direct and proximate result of Defendant Dendreon's failure to act upon multiple reports of racially discriminatory conduct, Defendant Dendreon chilled White's willingness to report additional racially discriminatory conduct in the future.

99. On information and belief, Defendant Dendreon retaliated against White in response to his complaints regarding racially discriminatory conduct by altering the terms and conditions of his employment due to his race.

100. As a direct and proximate result of White's complaints regarding racially discriminatory conduct by his Dendreon managers and supervisors, White was denied training for advancement and opportunities for promotion in favor of Caucasian and Hispanic employees with less experience and/or qualifications.

101. On information and belief, White was treated differently from white workers in the terms and conditions of his employment and was subjected to a hostile work environment because of his race.

102. Defendant Dendreon intentionally and maliciously discriminated against White in the terms, conditions, and benefits of his employment.

103. In retaliation for White's good faith opposition to racial harassment and racial discrimination, Defendant Dendreon took adverse employment actions against him.

104.  The unlawful actions of Defendant Dendreon, as set forth above, constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

105.  The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiff White.  Such conduct culminated in both (a) altering White's working conditions and (b) Defendant Dendreon taking tangible employment action that directly lead to White's suspension, administrative leave, and termination.

106.  Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment, and retaliation suffered by White.

107.  Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment,  racial discrimination, and/or retaliation suffered by White.

108.  As a direct and proximate result of its conduct, Defendant Dendreon has violated the proscriptions against race discrimination, racial harassment, and retaliation under Title VII and 42 U.S.C. § 1981.

109.  White was offended by such racial comments and they materially changed the terms and conditions of his employment.

110. White was fired or otherwise terminated from his employment with Defendant Dendreon based upon pretextual reasons, i.e. "attendance." Said reasons are and were patently false and were a pretext for his firing.

111. As a direct and proximate result of Defendant Dendreon's conduct, White has been deprived of income and other benefits due to him, including a bonus.

112. As a direct and proximate result of Defendant Dendreon's conduct, White has suffered embarrassment, humiliation, inconvenience, and mental distress.

113. Defendant Dendreon engaged in the practices complained of herein with malice and/or reckless indifference to White's federally protected rights.

114. Defendant Dendreon engaged in the practices complained of herein with the specific intent to cause harm to White.

115. Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors raises the presumption of deliberate indifference to the violation of White's federally protected rights.

116. As a direct and proximate result of Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors, White has been damaged through lost pay, potential raises, and bonuses.

## Boyce E. Bush

117.   From in or around February 2013 to February 19, 2014, Plaintiff Boyce E. Bush was employed in Defendant Dendreon's manufacturing department. As of the date of his termination on February 19, 2014, Bush held the title "Processing Lab Technician."

118.   Prior to his termination, Bush was aware of the racial epithets, slurs, and comments in the Dendreon workplace as previously described herein.

119.   Bush was offended by such racial comments and they materially changed the terms and conditions of his employment.

120.   Despite Bush's multiple complaints to his supervisors at Defendant Dendreon of offensive and humiliating racial comments and the racially charged environment, said conduct continued.

121.   As a direct and proximate result of Defendant Dendreon's failure to act upon multiple reports of racially discriminatory conduct, Defendant Dendreon chilled Bush's willingness to report additional racially discriminatory conduct in the future.

122.   On information and belief, Defendant Dendreon retaliated against Bush in response to his complaints regarding racially discriminatory conduct by altering the terms and conditions of his employment due to his race.

123. At the conclusion of the approximate two month investigation described above, Defendant Dendreon suspended Bush, put him on administrative leave, and then terminated his employment.

124. As a direct and proximate result of Bush's complaints regarding racially discriminatory conduct by his Dendreon managers and supervisors, Bush was denied training for advancement and opportunities for promotion in favor of Caucasian and Hispanic employees with less experience and/or qualifications.

125. On information and belief, Bush was treated differently from Caucasian and Hispanic employees of Defendant Dendreon in the terms and conditions of his employment and was subjected to a hostile work environment because of his race.

126. Defendant Dendreon intentionally and maliciously discriminated against Bush in the terms, conditions, and benefits of his employment.

127. In retaliation for Bush's good faith opposition to racial harassment and racial discrimination, Defendant Dendreon took adverse employment actions against him.

128. The unlawful actions of Defendant Dendreon, as set forth above, constitute a pattern, practice, custom, or policy for allowing acts of racial

harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

129. The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiff Bush. Such conduct culminated in both (a) altering Bush's working conditions and (b) Defendant Dendreon taking tangible employment action that directly lead to Bush's suspension, administrative leave, and termination.

130. Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment, and retaliation suffered by Bush.

131. Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment, racial discrimination, and/or retaliation suffered by Bush.

132. As a direct and proximate result of its conduct, Defendant Dendreon has violated the proscriptions against race discrimination, racial harassment, and retaliation under Title VII and 42 U.S.C. § 1981.

133. Bush was offended by such racial comments and they materially changed the terms and conditions of his employment.

28

134.   Bush was fired or otherwise terminated from his employment with Defendant Dendreon based upon pretextual reasons, *i.e.* "bullying." Said reasons are and were patently false and were a pretext for his firing.

135.   As a direct and proximate result of Defendant Dendreon's conduct, Bush has been deprived of income and other benefits due to him, including a bonus.

136.   As a direct and proximate result of Defendant Dendreon's conduct, Bush has suffered embarrassment, humiliation, inconvenience, and mental distress.

137.   Defendant Dendreon engaged in the practices complained of herein with malice and/or reckless indifference to Bush's federally protected rights.

138.   Defendant Dendreon engaged in the practices complained of herein with the specific intent to cause harm to Bush.

139.   Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors raises the presumption of deliberate indifference to the violation of Bush's federally protected rights.

140.   As a direct and proximate result of Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors, Bush has been damaged through lost pay, potential raises, and bonuses.

## **Facia Beysolow**

141.   Plaintiff Facia Beysolow was initially hired by Defendant Dendreon on or around April 4, 2011.   Beysolow was subsequently laid off by Defendant Dendreon, but was rehired on or about October 29, 2012.   At the time of her termination on February 19, 2014, Beysolow held the title "Manufacturing Associate I."

142.   Prior to her termination, Beysolow was aware of the racial epithets, slurs, and comments in the Dendreon workplace as previously described herein. Specifically, Beysolow was aware of certain racial comments regarding "fried chicken," Plaintiff Banks being labeled as an "angry black woman," and other similar comments.

143.   During the tenure of her employment with Defendant Dendreon, Beysolow was subjected to a racially hostile work environment.

144.   Beysolow was offended by such racial comments and they materially changed the terms and conditions of her employment.

145.   Despite Beysolow's multiple complaints to Dendreon personnel in the human resources and quality assurance departments regarding racially charged comments, stereotypes, and workplace environment, said conduct continued.

146. On information and belief, Defendant Dendreon retaliated against Beysolow in response to her complaints regarding racially discriminatory conduct by altering the terms and conditions of her employment due to her race.

147. At the conclusion of the approximate two month investigation described above, Defendant Dendreon suspended Beysolow, put her on administrative leave, and then terminated her employment.

148. As a direct and proximate result of Beysolow's complaints regarding racially discriminatory conduct by her Dendreon managers and supervisors, Beysolow was denied training for advancement and opportunities for promotion in favor of Caucasian and Hispanic employees with less experience and/or qualifications.

149. On information and belief, Beysolow was treated differently from Caucasian and Hispanic employees of Defendant Dendreon in the terms and conditions of her employment and was subjected to a hostile work environment because of her race.

150. Defendant Dendreon intentionally and maliciously discriminated against Beysolow in the terms, conditions, and benefits of her employment.

151. In retaliation for Beysolow's good faith opposition to racial harassment and racial discrimination, Defendant Dendreon took adverse employment actions against her.

152. The unlawful actions of Defendant Dendreon, as set forth above, constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

153. The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiff Beysolow. Such conduct culminated in both (a) altering Beysolow's working conditions and (b) Defendant Dendreon taking tangible employment action that directly lead to Beysolow's suspension, administrative leave, and termination.

154. Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment, and retaliation suffered by Beysolow.

155. Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment, racial discrimination, and/or retaliation suffered by Beysolow.

156. As a direct and proximate result of its conduct, Defendant Dendreon has violated the proscriptions against race discrimination, racial harassment, and retaliation under Title VII and 42 U.S.C. § 1981.

157. Beysolow was offended by such racial comments and they materially changed the terms and conditions of her employment.

158. Beysolow was fired or otherwise terminated from her employment with Defendant Dendreon based upon pretextual reasons, *i.e.* "manipulation and/or deviation of the manufacturing process." Said reasons are and were patently false and were a pretext for her firing.

159. As a direct and proximate result of Defendant Dendreon's conduct, Beysolow has been deprived of income and other benefits due to her, including a bonus.

160. As a direct and proximate result of Defendant Dendreon's conduct, Beysolow has suffered embarrassment, humiliation, inconvenience, and mental distress.

161. Defendant Dendreon engaged in the practices complained of herein with malice and/or reckless indifference to Beysolow's federally protected rights.

162. Defendant Dendreon engaged in the practices complained of herein with the specific intent to cause harm to Beysolow.

163. Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors raises the presumption of deliberate indifference to the violation of Beysolow's federally protected rights.

164. As a direct and proximate result of Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors, Beysolow has been damaged through lost pay, potential raises, and bonuses.

## Calvin Richardson

165. From on or about October 15, 2012 to February 19, 2014, Plaintiff Calvin Richardson was employed in Defendant Dendreon's manufacturing department. As of the date of his termination on February 19, 2014, Richardson held the title "Manufacturing Associate I."

166. Prior to his termination, Richardson was aware of the racial epithets, slurs, and comments in the Dendreon workplace as previously described herein.

167. Richardson was offended by such racial comments and they materially changed the terms and conditions of his employment.

168. Despite Richardson's multiple complaints to his supervisors at Defendant Dendreon of offensive and humiliating racial comments and the racially charged environment, said conduct continued.

169. On information and belief, Defendant Dendreon retaliated against Richardson in response to his complaints regarding racially discriminatory conduct by altering the terms and conditions of his employment due to his race.

170. At the conclusion of the approximate two month investigation described above, Defendant Dendreon suspended Richardson, put him on administrative leave, and then terminated his employment.

171. As a direct and proximate result of Richardson's complaints regarding racially discriminatory conduct by his Dendreon managers and supervisors, Richardson was denied training for advancement and opportunities for promotion in favor of Caucasian and Hispanic employees with less experience and/or qualifications.

172. On information and belief, Richardson was treated differently from Caucasian and Hispanic employees of Defendant Dendreon in the terms and conditions of his employment and was subjected to a hostile work environment because of his race.

173. Defendant Dendreon intentionally and maliciously discriminated against Richardson in the terms, conditions, and benefits of his employment.

35

174. In retaliation for Richardson's good faith opposition to racial harassment and racial discrimination, Defendant Dendreon took adverse employment actions against him.

175. The unlawful actions of Defendant Dendreon, as set forth above, constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

176. The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiff Richardson. Such conduct culminated in both (a) altering Richardson's working conditions and (b) Defendant Dendreon taking tangible employment action that directly lead to Richardson's suspension, administrative leave, and termination.

177. Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment, and retaliation suffered by Richardson.

178. Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment, racial discrimination, and/or retaliation suffered by Richardson.

179.   As a direct and proximate result of its conduct, Defendant Dendreon has violated the proscriptions against race discrimination, racial harassment, and retaliation under Title VII and 42 U.S.C. § 1981.

180.   Richardson was offended by such racial comments and they materially changed the terms and conditions of his employment.

181.   Richardson was fired or otherwise terminated from his employment with Defendant Dendreon based upon pretextual reasons, *i.e.* "intimidating others." Said reasons are and were patently false and were a pretext for his firing.

182.   As a direct and proximate result of Defendant Dendreon's conduct, Richardson has been deprived of income and other benefits due to him, including a bonus.

183.   As a direct and proximate result of Defendant Dendreon's conduct, Richardson has suffered embarrassment, humiliation, inconvenience, and mental distress.

184.   Defendant Dendreon engaged in the practices complained of herein with malice and/or reckless indifference to Richardson's federally protected rights.

185.   Defendant Dendreon engaged in the practices complained of herein with the specific intent to cause harm to Richardson.

37

186. Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors raises the presumption of deliberate indifference to the violation of Richardson's federally protected rights.

187. As a direct and proximate result of Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors, Richardson has been damaged through lost pay, potential raises, and bonuses.

## Zalika Howard

188. From on or about March 18, 2013 to February 19, 2014, Plaintiff Zalika Howard was employed in Defendant Dendreon's manufacturing department. As of the date of her termination on February 19, 2014, Howard held the title Manufacturing Associate I."

189. Prior to her termination, Howard was aware of the racial epithets, slurs, and comments in the Dendreon workplace as previously described herein.

190. Howard was offended by such racial comments and they materially changed the terms and conditions of her employment.

191. Despite Howard's multiple complaints to her supervisors at Defendant Dendreon of offensive and humiliating racial comments and the racially charged environment, said conduct continued.

192. On information and belief, Defendant Dendreon retaliated against Howard in response to her complaints regarding racially discriminatory conduct by altering the terms and conditions of her employment due to her race.

193. Approximately two (2) weeks prior to the beginning of the investigation described above, Howard received an award from Defendant Dendreon. Nonetheless, at the conclusion of the investigation, Defendant Dendreon suspended Howard, put her on administrative leave, and then terminated her employment.

194. As a direct and proximate result of Howard's complaints regarding racially discriminatory conduct by her Dendreon managers and supervisors, Howard was denied training for advancement and opportunities for promotion in favor of Caucasian and Hispanic employees with less experience and/or qualifications.

195. On information and belief, Howard was treated differently from Caucasian and Hispanic employees of Defendant Dendreon in the terms and conditions of her employment and was subjected to a hostile work environment because of her race.

196. Defendant Dendreon intentionally and maliciously discriminated against Howard in the terms, conditions, and benefits of her employment.

197.   In retaliation for Howard's good faith opposition to racial harassment and racial discrimination, Defendant Dendreon took adverse employment actions against her.

198.   The unlawful actions of Defendant Dendreon, as set forth above, constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

199.   The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiff Howard. Such conduct culminated in both (a) altering Howard's working conditions and (b) Defendant Dendreon taking tangible employment action that directly lead to Howard's suspension, administrative leave, and termination.

200.   Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment, and retaliation suffered by Howard.

201.   Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment, racial discrimination, and/or retaliation suffered by Howard.

40

202. As a direct and proximate result of its conduct, Defendant Dendreon has violated the proscriptions against race discrimination, racial harassment, and retaliation under Title VII and 42 U.S.C. § 1981.

203. Howard was offended by such racial comments and they materially changed the terms and conditions of her employment.

204. Howard was fired or otherwise terminated from her employment with Defendant Dendreon based upon pretextual reasons, *i.e.* "process manipulation." Said reasons are and were patently false and were a pretext for her firing.

205. As a direct and proximate result of Defendant Dendreon's conduct, Howard has been deprived of income and other benefits due to her, including a bonus.

206. As a direct and proximate result of Defendant Dendreon's conduct, Howard has suffered embarrassment, humiliation, inconvenience, and mental distress.

207. Defendant Dendreon engaged in the practices complained of herein with malice and/or reckless indifference to Howard's federally protected rights.

208. Defendant Dendreon engaged in the practices complained of herein with the specific intent to cause harm to Howard.

209. Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors raises the presumption of deliberate indifference to the violation of Howard's federally protected rights.

210. As a direct and proximate result of Defendant Dendreon's policies and/or customs and/or failure to adequately train its managers and supervisors, Howard has been damaged through lost pay, potential raises, and bonuses.

## COUNT I
### TITLE VII VIOLATIONS
**(Racial Harassment, Discrimination, & Retaliation)**

211. Plaintiffs restate and incorporate by reference the preceding allegations if fully set forth herein.

212. Plaintiffs were discriminated against by Defendant Dendreon in the terms, conditions, and privileges of their employment through the creation and toleration of a racially charged and hostile work environment.

213. Plaintiffs were subjected to a racially hostile work environment which was authorized, ratified, encouraged, and condoned by Defendant Dendreon. Said hostile work environment culminated in (1) the alteration of Plaintiffs' working conditions and (2) Defendant Dendreon taking tangible employment actions that directly lead to Plaintiffs' suspensions, administrative leaves, and terminations.

214.   Said racially hostile work environment  includes, but is not limited to, racial slurs, racial jokes, racial harassment, racial stereotypes, and other disparate treatment by which Defendant Dendreon's African-American employees are treated as inferior.

215.   Said racially hostile work environment changed the terms and conditions of Plaintiffs' employment with Defendant Dendreon.

216.   Defendant Dendreon, through its supervisors, management, and/or human resources personnel participated in, was aware of, encouraged, and/or condoned said racially hostile work environment.

217.   Defendant Dendreon failed to properly train its employees, including its supervisors, management, and/or human resources personnel, on its purported anti-discrimination policy and reporting procedures.

218.   The dissemination of any anti-discrimination policy and reporting procedures after Plaintiffs filed their EEOC Charges of Discrimination against Defendant Dendreon have been ineffective because supervisory, human resources, and/or management personnel have participated in, are aware of, encourage, and/or condone the racially hostile work environment.

219.   Defendant Dendreon, through its agents and employees, has a racial animus against African-Americans, including Plaintiffs.

220.   Plaintiffs have each been directly affected by Defendant Dendreon's discriminatory practices described herein.

221.   Defendant Dendreon's systemic discrimination adversely affected Plaintiffs' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

222.   Plaintiffs made good faith complaints in opposition to the racial discrimination and racial harassment to which they, and other African-American employees, were subjected.

223.   In retaliation for Plaintiffs' good faith opposition to racial harassment and racial discrimination, Defendant Dendreon retaliated against Plaintiffs as well as other Dendreon African-American employees who have protested and/or complained about racially discriminatory treatment.

224.   Defendant Dendreon's conduct constitutes retaliation based, at least in part, on Plaintiffs' protected activities of opposing racial discrimination and harassment.

225.   Defendant Dendreon's unlawful actions constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

226. The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiffs. Such conduct culminated in both (a) altering Plaintiffs' working conditions and (b) the taking of tangible employment action that directly lead to Plaintiffs' suspensions, administrative leaves, and terminations.

227. Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment and retaliation of the Plaintiffs.

228. Defendant Dendreon failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial harassment, racial discrimination, and/or retaliation of Plaintiffs.

229. Defendant Dendreon's actions violate Title VII.

230. As a direct and proximate result of Defendant Dendreon's conduct, Plaintiffs have been injured and harmed, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

## COUNT II
### VIOLATIONS OF 42 U.S.C. § 1981
**(Racial Harassment, Discrimination, & Retaliation)**

231. Plaintiffs restate and incorporate by reference the preceding allegations if fully set forth herein.

232. The Plaintiffs' claims under 42 U.S.C. § 1981 as alleged within this Count are asserted through the vehicle of 42 U.S.C. § 1983.

233. Plaintiffs have been discriminated against by Defendant Dendreon in the terms, conditions, and privileges of their employment through the creation and toleration of a racially charged and hostile work environment.

234. Plaintiffs have been subject to a racially hostile work environment which has been authorized, ratified, encouraged, and condoned by Defendant Dendreon Such conduct culminated in both (a) altering Plaintiffs' working conditions and (b) Defendant Dendreon's taking of tangible employment action that directly lead to Plaintiffs' suspensions, administrative leaves, and terminations.

235. Said racially hostile work environment includes, but is not limited to, racial slurs, racial jokes, racial harassment, racial stereotypes, and other disparate treatment by which Defendant Dendreon's African-American employees are treated as inferior.

236. Said racially hostile work environment changed the terms and conditions of Plaintiffs' employment with Defendant Dendreon.

237. Defendant Dendreon, through its supervisors, management, and/or human resources personnel, participated in, was aware of, encouraged, and/or condoned said racially hostile work environment.

238. Defendant Dendreon failed to train its employees, including its supervisors, management, and/or human resources personnel as well as Plaintiffs, on its purported anti-discrimination policy and reporting procedures.

239. Defendant Dendreon's dissemination of any anti-discrimination policy and reporting procedures has been ineffective because a racially hostile work environment continues to exist after said reporting(s).

240. Defendant Dendreon, through its agents and employees, has a racial animus against African-Americans, including Plaintiffs.

241. Plaintiffs have been directly affected by Defendant Dendreon's discriminatory practices described herein.

242. Defendant Dendreon's systemic discrimination adversely affected the Plaintiffs' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

243. Plaintiffs made good faith complaints in opposition to the racial discrimination and racial harassment to which they, as well as other Dendreon African-American employees, were subjected.

47

244. In retaliation for Plaintiffs' good faith opposition to racial harassment and racial discrimination, Defendant Dendreon retaliated against Plaintiffs as well as other Dendreon African-American employees who have protested and/or complained about the racially discriminatory treatment.

245. Defendant Dendreon's retaliatory conduct was, at least in part, on Plaintiffs' protected activities of opposing racial discrimination and harassment.

246. Defendant Dendreon's unlawful actions constitute a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of Plaintiffs and other Dendreon employees' federally protected rights.

247. The conduct of Defendant Dendreon was so severe and pervasive that it created a racially hostile working environment for Plaintiffs. Such conduct culminated in both (a) altering Plaintiffs' working conditions and (b) the taking of tangible employment action that directly lead to Plaintiffs' suspensions, administrative leaves, and terminations.

248. Defendant Dendreon knew, or should have known, of the racial discrimination, racial harassment, and retaliation suffered by Plaintiffs.

249. Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment, racial discrimination, and/or retaliation suffered by Plaintiffs.

250. Defendant Dendreon's actions violate 42 U.S.C. §1981.

251. As a direct and proximate result of Defendant Dendreon's actions, Plaintiffs have been injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

## COUNT III
### VIOLATIONS OF TITLE VII
### (Race—Disparate Treatment)

252. Plaintiffs restate and incorporate by reference the preceding allegations if fully set forth herein.

253. Plaintiffs have been discriminated against by Defendant Dendreon based on their race in the terms of wages/compensation, promotions, job assignments, discipline, discharge (suspensions, administrative leave, lay-offs and/or termination), and other terms, conditions, and privileges of their employment.

254. Defendant Dendreon engaged in a pattern and practice of discriminating against its African-American employees, including Plaintiffs, with respect to wages/compensation, promotions, job assignments, discipline, discharge

(suspensions, administrative leave, lay-offs and/or termination), and other terms, and conditions, and privileges of their employment.

255. Defendant Dendreon's selection procedures have had a disparate impact on African-American employees, including Plaintiffs.

256. Defendant Dendreon has engaged in a pattern and practice of denying African-American employees opportunities for promotion. Rather than posting opportunities for promotion, Defendant Dendreon simply gives these positions to its Caucasian and Hispanic employees.

257. Defendant Dendreon denied Plaintiffs promotions for which they were qualified and for which they expressed an interest. Instead, these positions were instead given to Caucasian and Hispanic employees with less experience, fewer qualifications, and/or lacked seniority. Plaintiffs have been denied these positions based on their race because Defendant Dendreon, through its agents and employees, has a racial animus against African- Americans.

258. The criteria utilized by Defendant Dendreon in making selection decisions for better and higher paying positions are discriminatory.

259. Defendant Dendreon denied Plaintiffs opportunities to apply and be selected for better and higher-paying positions.

260. Plaintiffs have been directly affected by Defendant Dendreon's discriminatory practices. As such, Plaintiffs were deprived of the opportunity to work in an environment free of racial discrimination. Plaintiffs were also deprived of the opportunity to be supervised by and work with persons of their own race who would have been promoted in the absence of discrimination by Defendant Dendreon. Such discrimination has also denied Plaintiffs the opportunity to work in a fully racially integrated environment and otherwise has adversely affected Plaintiffs' opportunity for enjoyment to work.

261. Defendant Dendreon's systemic discrimination adversely affected Plaintiffs' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

262. In the absence of Defendant Dendreon's racial discrimination, Plaintiffs would have had a greater opportunity to supervise and be supervised by persons of their same race and to have persons of their race integrated into the decision-making process as it relates to wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment. By having members of their own race integrated into such processes, Plaintiffs' conditions in all of the foregoing respects would have been significantly

improved, rendering it less likely that Plaintiffs would be subjected to racial bias in such decisions to the same degree as they have been.

263. Defendant Dendreon's policy and practice of racial discrimination deprived African-American employees, including Plaintiffs, of opportunities regarding wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment.

264. Even in those instances in which they have not been personally deprived of promotions, wages/compensation, job assignments, and other terms and conditions of employment, Plaintiffs' former employment status was adversely affected by similar discriminatory treatment of other African-American employees by Defendant Dendreon.

265. Plaintiffs made good faith complaints in opposition to the racial discrimination to which they, and other Dendreon African-American employees, were subjected to by Defendant Dendreon.

266. In response to Plaintiffs' good faith opposition to racial harassment and racial discrimination, Defendant Dendreon retaliated against Plaintiffs and other Dendreon African-American employees who have protested and/or complained of racially discriminatory treatment.

267.   Defendant Dendreon's conduct constitutes retaliation based, at least in part, on the Plaintiffs' protected activities of opposing racial discrimination.

268.   Defendant Dendreon's unlawful conduct constitutes a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

269.   Defendant Dendreon knew, or should have known, of the racial discrimination and retaliation directed towards Plaintiffs.

270.   Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment,  racial discrimination, and/or retaliation suffered by Plaintiffs.

271.   Defendant Dendreon's actions violate Title VII.

272.   As a direct and proximate result of Defendant Dendreon's actions, Plaintiffs have been injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

## COUNT IV
### VIOLATIONS OF 42 U.S.C. § 1981
### (Race—Disparate Treatment)

273.   Plaintiffs restate and incorporate by reference the preceding allegations if fully set forth herein.

274. The Plaintiffs' claims under 42 U.S.C. § 1981 as alleged within this Count are asserted through the vehicle of 42 U.S.C. §1983.

275. Plaintiffs have been discriminated against by Defendant Dendreon based on their race in the terms of wages/compensation, promotions, job assignments, discipline, discharge (suspensions, administrative leave, lay-offs and/or termination), and other terms, conditions, and privileges of their employment.

276. Defendant Dendreon engaged in a pattern and practice of discriminating against its African-American employees, including Plaintiffs, with respect to wages/compensation, promotions, job assignments, discipline, discharge (suspensions, administrative leave, lay-offs and/or termination), and other terms, and conditions, and privileges of their employment.

277. Defendant Dendreon's selection procedures have had a disparate impact on its African-American employees, including Plaintiffs.

278. Defendant Dendreon has engaged in a pattern and practice of denying African-American employees opportunities for promotion. Rather than posting opportunities for promotion, Defendant Dendreon simply gives these positions to its Caucasian and Hispanic employees.

279. Defendant Dendreon denied Plaintiffs promotions for which they were qualified and for which they expressed an interest. Instead, these positions were instead given to Caucasian and Hispanic employees with less experience, fewer qualifications, and/or lacked seniority. Plaintiffs have been denied these positions based on their race because Defendant Dendreon, through its agents and employees, has a racial animus against African-Americans.

280. The criteria utilized by Defendant Dendreon in making selection decisions for better and higher paying positions are discriminatory.

281. Defendant Dendreon denied Plaintiffs opportunities to apply and be selected for better and higher-paying positions.

282. Plaintiffs have been directly affected by Defendant Dendreon's discriminatory practices. As such, Plaintiffs were deprived of the opportunity to work in an environment free of racial discrimination. Plaintiffs were also deprived of the opportunity to be supervised by and work with persons of their own race who would have been promoted in the absence of discrimination by Defendant Dendreon. Such discrimination has also denied Plaintiffs the opportunity to work in a fully racially integrated environment and otherwise has adversely affected Plaintiffs' opportunity for enjoyment to work.

283. Defendant Dendreon's systemic discrimination adversely affected Plaintiffs' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

284. In the absence of Defendant Dendreon's racial discrimination, Plaintiffs would have had a greater opportunity to supervise and be supervised by persons of their same race and to have persons of their race integrated into the decision-making process as it relates to wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment. By having members of their own race integrated into such processes, Plaintiffs' conditions in all of the foregoing respects would have been significantly improved, rendering it less likely that Plaintiffs would be subjected to racial bias in such decisions to the same degree as they have been.

285. Defendant Dendreon's policy and practice of racial discrimination deprived African-American employees, including Plaintiffs, of opportunities regarding wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment.

286. Even in those instances in which they have not been personally deprived of promotions, wages/compensation, job assignments, and other terms and conditions of employment, Plaintiffs' former employment status was adversely

56

affected by similar discriminatory treatment of other African-American employees by Defendant Dendreon.

287. Plaintiffs made good faith complaints in opposition to the racial discrimination to which they, and other Dendreon African-American employees, were subjected to by Defendant Dendreon.

288. In response to Plaintiffs' good faith opposition to racial harassment and racial discrimination, Defendant Dendreon retaliated against Plaintiffs and other Dendreon African-American employees who have protested and/or complained of racially discriminatory treatment.

289. Defendant Dendreon's conduct constitutes retaliation based, at least in part, on the Plaintiffs' protected activities of opposing racial discrimination.

290. Defendant Dendreon's unlawful conduct constitutes a pattern, practice, custom, or policy for allowing acts of racial harassment, racial discrimination, and/or retaliation in violation of its employees' federally protected rights.

291. Defendant Dendreon knew, or should have known, of the racial discrimination and retaliation directed towards Plaintiffs.

292.   Defendant Dendreon failed to take any prompt and/or effective action reasonably calculated to result in the prevention and/or remedy of the racial harassment, racial discrimination, and/or retaliation suffered by Plaintiffs.

293.   Defendant Dendreon's actions violate Title VII § 1981.

294.   As a direct and proximate result of Defendant Dendreon's actions, Plaintiffs have been injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

## COUNT V
### PUNITIVE DAMAGES
### (O.C.G.A. §§ 51-12-5 & 51-12-5.1)

295.   Plaintiffs restate and incorporate by reference the preceding allegations if fully set forth herein.

296.   Defendant Dendreon's conduct, as set forth hereinabove, shows willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which raises the presumption of a conscious indifference to the consequences thereof.

297.   Defendant Dendreon's unlawful conduct was specifically intended to cause harm to Plaintiffs.

298.   Pursuant to O.C.G.A. 51-12-5.1, Plaintiffs are entitled to recover punitive damages in an amount to be determined by the enlightened conscience of

an impartial jury to punish and deter Defendant Dendreon from repeating or continuing such unlawful conduct.

## JURY TRIAL DEMANDED

299. Plaintiffs demand that the instant action be tried before an impartial jury of their peers.

WHEREFORE LaShunda Banks, Jarrod S. White, Boyce E. Bush, Facia Beysolow, Calvin Richardson, and Zalika Howard pray upon this Court for the following relief:

(a) Defendant Dendreon be served with process in accordance with the applicable law;

(b) Defendant Dendreon be ordered to pay leave and other benefits (or front pay) and back pay (with interest);

(c) Defendant Dendreon be ordered to compensate Plaintiffs for all damages proximately caused by its discriminatory conduct;

(d) Defendant Dendreon be ordered to pay Plaintiffs punitive damages in an amount to be determined by the enlightened conscience of an impartial jury;

(e) Defendant Dendreon be ordered to pay Plaintiffs nominal damages;

(f) Plaintiffs recover all reasonable and necessary attorneys' fees and costs of litigation incurred as a result of the filing of this lawsuit; and

(g)     Any such other and further relief deemed just and proper by this

Court.

This 25th day of July, 2014.

COCHRAN & EDWARDS, LLC
2950 Atlanta Road SE
Smyrna, Georgia 30080-3655
(770) 435-2131
(770) 436-6877 (*fax*)
randy@cochranedwardslaw.com
paul@cochranedwardslaw.com

R. Randy Edwards
Georgia Bar No. 241525
Paul A. Piland
Georgia Bar No. 558748
Jeffrey G. Casurella
Georgia Bar No. 116160

*Attorneys for Plaintiffs*

## **LOCAL RULE 7.1D CERTIFICATION**

By signature below, counsel certifies that the foregoing document was

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

Paul A. Piland
Georgia Bar No. 558748